FILED
United States Court of Appeals
Tenth Circuit

August 19, 2022

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

RICHARD GRISSOM,

    Plaintiff - Appellant,

v.

ANDREW PALM; DANIEL SCHNURR; MARIA BOS; DUSTIN RANDOLPH; ANDREW FUOSS; PATRICK MANSFIELD; ABRAHAM LOEWEN,

    Defendants - Appellees.

No. 21-3194
(D.C. No. 5:19-CV-03178-EFM-ADM)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

State prisoner Richard Grissom sued under 42 U.S.C. § 1983 for excessive force in violation of the Eighth Amendment. The district court granted summary judgment to the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendants, holding they were entitled to qualified immunity. Mr. Grissom, appearing pro se, appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

## I. BACKGROUND

### A. *Factual History*

The following summarizes the facts presented to the district court on summary judgment. We review the record in the light most favorable to the nonmovant, Mr. Grissom. *Emmett v. Armstrong*, 973 F.3d 1127, 1130 (10th Cir. 2020). The evidence included a declaration from Corrections Supervisor Andrew Palm and an affidavit from Mr. Grissom setting forth their accounts of the altercation between them. ROA, Vol. I at 818-22, 852-64. It also included a video of the incident taken from a prison surveillance camera. *See* ROA, Vol. III.[2]

On November 25, 2017, Mr. Grissom was imprisoned at the Kansas Department of Corrections ("KDOC") El Dorado facility. Officer Palm walked by Mr. Grissom's

---

[1] We construe Mr. Grissom's pro se filings liberally, but we do not act as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[2] The video was sealed in district court. Appellees argue it should continue to be sealed to protect prison security. In their publicly filed brief, they nonetheless describe in detail the altercation between Officer Palm and Mr. Grissom based upon, and with citations to, the video. So did the district court in its summary judgment order. The video will remain sealed, but Appellees have waived any interest in sealing written descriptions of the altercation based on the video in their brief or in this Order and Judgment.

Based on the parties' filings in this court on the sealing issue, we remanded to the district court for factual findings regarding Mr. Grissom's access to the video. On remand, the district court found he "had the opportunity to view the video upon

second-floor cell and saw him holding a bag containing a "green leafy substance." *Id.* at 818. He asked the control booth to open Mr. Grissom's door so he could determine whether the substance was contraband. When the door opened, Officer Palm asked to see the bag. Mr. Grissom told him the bag contained sage and to verify with the Captain's Office that he could have it for religious purposes.

Mr. Grissom gave the bag to Officer Palm but became upset at the way Officer Palm was handling it, telling him to stop trying to open the bag "because he was unclean and going to contaminate [it]." *Id.* at 853. When Officer Palm asked to see a box Mr. Grissom was holding, Mr. Grissom "reached for the sage" and said, "then give me that back." *Id.* (quotations omitted). Officer Palm believed Mr. Grissom was "aggressively attempt[ing] to snatch the bag from [his] hands." *Id.* at 819. Mr. Grissom countered that Officer Palm "overreacted," complaining that he was "simply going to trade the . . . box . . . for the [sage that] [Officer] Palm was holding." *Id.* at 850. Mr. Grissom asked to see the Captain to resolve the matter.

Officer Palm ordered Mr. Grissom to turn around to be handcuffed for transit to the Captain's Office. When Officer Palm ordered him to turn his wrist, Mr. Grissom

---

request." Mem. & Order at 6, *Grissom v. Palm*, No. 19-3178-EFM (D. Kan. Aug. 9, 2022), ECF # 81.

Further, on remand, the district court, in its July 15, 2022 order, invited Mr. Grissom to submit any additional evidence to that court, but he did not do so. In a filing to this court on August 17, 2022, Mr. Grissom continues to contest this matter, but he has not shown that the district court's finding in its August 9, 2022 order was clearly erroneous. *See Ramos v. Banner Health*, 1 F.4th 769, 777 (10th Cir. 2021) ("We review the district court's findings of fact for clear error.").

replied that he had "shoulder inflexibility" and the handcuffs did not "allow for movement." *Id.* at 851. Officer Palm had previously handcuffed Mr. Grissom and was aware that he preferred "two sets of cuffs," but he was unable to do so here because Mr. Grissom was "moving his arm in a back and forth motion and refusing to turn his wrist to allow the first handcuff to be secured on his wrist." *Id.* at 820. Mr. Grissom turned back toward Officer Palm, who "issued an 'officer needs assistance' call" as he tried to handcuff Mr. Grissom. *Id.*

The situation quickly deteriorated. Officer Palm claimed that Mr. Grissom abruptly turned, knocking the handcuffs "across the cell" and prompting him to "assume[] a defensive fighting stance and block[] several strikes from [Mr.] Grissom." *Id.* at 821. Mr. Grissom argued that Officer "Palm was the culprit who was throwing punches while [he] deflected them." *Id.* at 854. Mr. Grissom denied knocking the handcuffs across the cell and claimed that Officer Palm instead "used them like brass knuckles in his attempts to strike [him]." *Id.* at 853-54.

Mr. Grissom said he pushed Officer Palm back toward the cell's opening but Officer Palm grabbed his arm and tried to pull him forward. Officer Palm said he retreated out of the cell and "deployed OC." *Id.* at 821.[3] He claimed that Mr. Grissom also exited the cell, striking him and trying to throw him over the second-floor railing.

---

[3] "OC" refers to oleoresin capsicum, a chemical agent commonly known "as pepper spray or mace." *Id.* at 771.

To defend himself, Officer Palm said that he repeatedly struck Mr. Grissom in the head with the metal OC canister.

Mr. Grissom said he struck Officer Palm only once, and only in the stomach while Officer Palm had placed him in a painful headlock.  Mr. Grissom denied trying to throw Officer Palm over the railing, stating that instead "he was going to body slam [him] onto the . . . floor they were standing on."  *Id.* at 854.  Mr. Grissom said that he grabbed Officer Palm's legs, "picked him up," but then "simply laid him 'gently' onto the tier" and complied with responding officers' request to cuff up.  *Id.* at 861.

The video of the incident came from a camera on the other side of the tier.[4]  The camera did not record sound, but the video mostly confirmed Officer Palm's version.  It showed the following.

After Mr. Grissom's cell door opened, Officer Palm and Mr. Grissom spoke for about two minutes.  Mr. Grissom pointed and moved his arms while speaking.  Officer Palm began one of three attempts to handcuff him.  After the second attempt, Correctional Officer Abraham Loewen arrived and stood to the side of the cell.  On the third attempt, Mr. Grissom jerked his arm away from Officer Palm, who pushed Mr. Grissom against the inside cell wall.  Officer Palm quickly backed off and assumed a fighting stance.  He and Mr. Grissom punched and blocked punches for five to ten seconds.  Mr. Grissom advanced toward the cell door.  Officer Palm backed up and

---

[4] Mr. Grissom's cell was located among a second-tier row of cells.  The walkway outside the cells had a railing to prevent a fall to the ground level.

grabbed an OC cannister from his utility belt. Two more officers arrived. One stood several feet away from Mr. Grissom's cell and the other stood near the top of the stairs as other inmates approached.

Mr. Grissom came through the cell door toward Officer Palm, prompting him to discharge a burst of OC spray into Mr. Grissom's face. As Mr. Grissom emerged from his cell, he swung his fist at Officer Palm's head, making contact. Mr. Grissom then wrapped his arm around Officer Palm's waist. Attempting to free himself, Officer Palm repeatedly struck Mr. Grissom in the head with his OC cannister. Another inmate then attacked two of the responding officers.

As Officer Palm and Mr. Grissom struggled, Mr. Grissom grabbed Officer Palm's right leg and began to pick him up next to the second-floor guard rail. Both men fell on the floor outside the cell. Officer Loewen pushed Mr. Grissom back into his cell while Officer Palm discharged his OC cannister again toward Mr. Grissom. Responding officers secured the scene, handcuffed Mr. Grissom, and escorted him out of the cell.

The attending nurse at the prison infirmary examined Mr. Grissom. She reported that he had an abrasion to his right shin; several marble-sized knots on his scalp; a red, swollen left ear; an abrasion with bruising to his upper back; a scratch on his neck and under his lower lip; and burning sensations in his eyes and on his skin from the OC. Mr. Grissom complained of a headache, dizziness, and blurred vision.

A KDOC internal investigation found that Officer Palm's poor judgment, lack of communication, and unnecessary force escalated the situation. He received a three-day

suspension. KDOC penalized Mr. Grissom with segregation time for battery and disobeying orders. In January 2018, KDOC transferred him to its Hutchinson facility.

### B. *Procedural History*

Mr. Grissom sued Officer Palm, Officer Loewen, and other KDOC personnel under 42 U.S.C. § 1983. He claimed Eighth Amendment violations because Officer Palm used excessive force, Officer Loewen failed to intervene to protect him, and others approved of Officer Palm's actions and retaliated against him.

In response to the Defendants' summary judgment motion, Mr. Grissom argued only his excessive force claims against Officers Palm and Loewen. The district court thus dismissed the claims against the other Defendants. It then determined that Officers Palm and Loewen were entitled to qualified immunity and granted summary judgment to them because (1) "the video confirm[ed] . . . [Mr. Grissom's] aggression and violent assault on [Officer] Palm"; and (2) Mr. Grissom identified "no case finding a constitutional violation under similar circumstances." ROA, Vol. I at 917, 918.

Mr. Grissom appeals the summary judgment based on qualified immunity granted to Officers Palm and Loewen.

## II. DISCUSSION

### A. *Standard of Review and Qualified Immunity*

"We review de novo the district court's order granting summary judgment . . . on qualified-immunity grounds." *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's

motion." *Id.* (quotations omitted). The plaintiff must "show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900-01 (10th Cir. 2016) (quotations omitted). "We have discretion to address the two qualified-immunity prongs in whatever order is appropriate under the circumstances." *Toevs v. Reid*, 685 F.3d 903, 910 (10th Cir. 2012).

In conducting our analysis, we "view the evidence, and all inferences arising from that evidence, in the light most favorable to the nonmoving party[;] . . . this usually means adopting the plaintiff's version of the facts." *Emmett v. Armstrong*, 973 F.3d 1127, 1130 (10th Cir. 2020) (ellipsis and quotations omitted). But "[w]hen the record on appeal contains video evidence of the incident in question, . . . we will accept the version of the facts portrayed in the video . . . to the extent that it blatantly contradicts the plaintiff's version of events." *Id.* at 1131 (brackets and quotations omitted).

B. *Excessive Force*

"[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment." *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). The plaintiff must establish objective and subjective elements. *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018). The objective element "asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* (quotations omitted). The subjective element concerns whether "the official[ ] acted with a sufficiently culpable state of mind," such that he "use[d] force maliciously and

sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Redmond*, 882 F.3d at 936 (quotations omitted).

On appeal, Mr. Grissom pursues three excessive-force theories: (1) "assault and battery," Aplt. Br. at 6; (2) use of regular-sized handcuffs; and (3) failure to intervene. But even if we assume that Officer Palm used excessive force, we affirm because Mr. Grissom has failed to show a constitutional violation based on clearly established law.

## C. *Clearly Established Law*

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted). The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11-12 (2021) (per curiam). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12. Accordingly, our "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotations omitted).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct," "existing precedent . . . [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[T]he 'clearly established' analysis" requires "identify[ing] a case where an officer act[ed] under similar circumstances." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per

curiam). In other words, "officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quotations omitted). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right." *Ashaheed v. Currington*, 7 F.4th 1236, 1246 (10th Cir. 2021) (quotations omitted).

Although "general statements of the law are not inherently incapable of giving fair and clear warning to officers," the unlawfulness of their conduct "must be apparent" "in the light of pre-existing law." *White*, 137 S. Ct. at 552 (quotations omitted).

1. **Assault & Battery**

The surveillance video shows that (1) Officer Palm attempted to handcuff Mr. Grissom, (2) Mr. Grissom jerked his hand away on the third attempt, and (3) the situation deteriorated into a violent struggle as Officer Palm tried to gain control of Mr. Grissom and defend against his aggression. Officer Palm repeatedly struck Mr. Grissom on the head with the metal OC canister and tried to hit him in the face with the handcuffs.[5]

Mr. Grissom fails to identify a single Supreme Court or Tenth Circuit case to show clearly established law. Instead, he identifies two Eleventh Circuit cases, but because

---

[5] Mr. Grissom does not challenge Officer Palm's application of OC spray as excessive. "Issues not raised in the opening brief are deemed abandoned or waived." *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) (quotations omitted).

they concerned distinguishable circumstances, neither would have put a reasonable officer in Officer Palm's position on notice of a constitutional violation.

First, he mentions *Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002), *abrogated on other grounds as recognized in Patel v. Lanier Cnty.*, 969 F.3d 1173, 1185-86 (11th Cir. 2020). It affirmed a jury's award of damages against corrections officers who had taken the prisoner into his cell, choked and punched him, and then threw him to the floor, where they kicked him and beat him "with batons until he lost consciousness." *Id.* at 1312. But *Johnson*, unlike here, did not involve an inmate initiating a struggle during an officer's handcuffing attempts that escalated into a fight with that officer.

Second, Mr. Grissom also cites, *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009), *abrogated on other grounds as recognized in Patel v. Lanier Cnty.*, 969 F.3d 1173, 1185-86 (11th Cir. 2020). There, six officers struggled to handcuff a combative pretrial detainee. Another officer entered the room and tried to kick the detainee's arm so he would release his grip on an officer, but he inadvertently kicked the detainee in the face and seriously injured him. *Id.* at 1214, 1219. The Eleventh Circuit determined that the officer who kicked the detainee did not use excessive force because the detainee was resisting the handcuffing attempts and "did not let go of [the other officer's] arm despite being punched." *Id.* at 1218-19. This factual scenario differs from Officer Palm's efforts to defend himself, even if he did so aggressively, against Mr. Grissom's attacks. The cases Mr. Grissom cites therefore did not clearly establish the law.[6]

---

[6] Although Mr. Grissom bears the burden of showing clearly established law, *see Gutierrez*, 841 F.3d at 900-01, we also have not found a case that would have put

We have recognized that "when prison officials must act to preserve internal order and discipline," they enjoy "wide-ranging deference." *Redmond*, 882 F.3d at 938 (quotations omitted). "[A] prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself." *Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983). This explains the lack of case law that would make it "sufficiently clear that every reasonable official [in Officer Palm's position]," *Mullenix*, 136 S. Ct. at 308, would have understood that the force he employed against Mr. Grissom—in both defending against his aggression and restoring order—violated the Eighth Amendment. *See Ashaheed*, 7 F.4th at 1247 n.6 (noting that factual specificity between prior precedent and the instant case is "especially important" in the excessive-force context because "officers are forced to make split-second judgments about the amount of force that is necessary" (alterations and quotations omitted)).

Decisions in this circuit and elsewhere have rejected excessive-force claims where one or more corrections officers used force to gain control of a combative or resistant

---

a reasonable officer in Officer Palm's position on notice that his actions violated the Eighth Amendment. Mr. Grissom used force and grappled violently with Officer Palm. This differs, for instance, from the prisoner's claim in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), where a corrections officer allegedly slammed the prisoner onto the concrete floor and then punched, kicked, kneed, and choked him simply for requesting a grievance form. *Id.* at 38 (holding that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury").

prisoner.[7] Particularly instructive is *Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991), in which this court addressed two separate incidents and reached different outcomes under the Eighth Amendment. First, we determined that an officer did not maliciously and sadistically "knock[] [Mr.] Miller to the floor" and "scuffle" with him after Mr. Miller had exited the law library without permission, resisted the officer's handcuffing efforts, and "wrestled with [the officer]." *Id.* at 1564, 1567. On the other hand, we found malicious and sadistic conduct where multiple officers later entered Mr. Miller's holding cell and badly injured him by kicking, choking, beating and stomping him while he was restrained. *Id.*

---

[7] *See, e.g.*, *Lehman v. McKinnon*, No. 20-1312, 2021 WL 4129229, at *1, *3 (10th Cir. Sept. 10, 2021) (unpublished) (determining that officer's use of "[f]orce was surely necessary to overcome [inmate's] assault" where inmate had begun to comply with officer's handcuffing order but then threw several punches and caused the officer to fall to the floor, where the inmate delivered several more blows); *Tate v. Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (unpublished) (concluding that corrections "officers might have reasonably believed" it was necessary to use force to subdue inmate, including beating him and hitting him with handcuffs, where the inmate had "recent prior violent behavior" against one of the officers, was yelling at the officers as they escorted him down a crowded hall, and then turned toward an officer); and *Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (unpublished) (indicating that force was necessary where inmate resisted officer's entry into his cell and "scuffl[ed]" with officer, who responded by punching inmate and placing him in a headlock (quotations omitted)). Unpublished cases, even those from other circuits, can indicate that the law is not clearly established. *See City and County of San Francisco v. Sheehan*, 575 U.S. 600, 617 (2015) (suggesting that a "robust consensus of cases of persuasive authority" showed that the federal right advanced by the plaintiff was not clearly established (quotations omitted)); *Thompson v. Ragland*, 23 F.4th 1252, 1260 n.3 (10th Cir. 2022) (observing that unpublished opinions "can be quite relevant in showing that the law was not clearly established" (quotations omitted)).

The facts of Mr. Grissom's case are much closer to the first *Miller* incident than the second. Officer Palm attempted to handcuff Mr. Grissom for transit purposes and quickly found himself engaged in a violent fight where he needed to defend himself and regain control of the situation. As noted, we have not "identif[ied] a case where an officer acting under similar circumstances was held to have violated the [Eighth] Amendment." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (ellipsis and quotations omitted).

Finally, we reject Mr. Grissom's suggestion that the "infringement of [his] rights [was] obvious." Aplt. Br. at 5. Granted, "[g]eneral statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotations omitted). But we fail to see how Officer Palm's use of the handcuffs and OC canister while attempting to subdue Mr. Grissom obviously qualifies as "malicious[] and sadistic[]" uses of force, rather than "good faith effort[s] to maintain or restore discipline." *Redmond*, 882 F.3d at 936.

Because Mr. Grissom has not shown it was clearly established on November 25, 2017, that the force Officer Palm used was excessive, we conclude that qualified immunity applies.[8]

---

[8] Mr. Grissom contests qualified immunity because KDOC found that Officer Palm violated its Internal Management Policies and Procedures regarding the use of force. But such a finding is not dispositive on qualified immunity. *See Groh v. Ramirez*, 540 U.S. 551, 564 n.7 (2004) (noting that, standing alone, an official is not "deprived of qualified immunity whenever he violates an internal guideline"); *Wilson*

2. **Handcuffing**

We reach the same conclusion on Mr. Grissom's handcuffing claim. He identifies no authority, and we have found none, clearly establishing that an officer's attempt to apply regular-size handcuffs on an inmate who may need large-size handcuffs violates the Eighth Amendment. *See Stevenson v. Cordova*, 733 F. App'x 939, 946 (10th Cir. 2018) (unpublished) (finding no authority "in this circuit or otherwise" clearly establishing that an officer violates the Eight Amendment by refusing to loosen a prisoner's handcuffs).

3. **Failure to Intervene**

Because we conclude it was not clearly established that Officer Palm's use of force was unlawful, it necessarily follows that Officer Loewen did not have a clearly established obligation to intervene to stop such force. *See Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (observing that an officer "cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known" (quotations omitted)).

---

*v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (observing that "violation of a police department regulation is insufficient for liability under section 1983").

## III. CONCLUSION

Because Mr. Grissom has failed to show a violation of a right that was clearly established, Officers Palm and Loewen are entitled to summary judgment based on qualified immunity. We affirm the district court's judgment.

                                    Entered for the Court

                                    Scott M. Matheson, Jr.
                                    Circuit Judge