Case No. 21-3194

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

**RICHARD GRISSOM**,
*Plaintiff-Appellant*

v.

**ANDREW J. PALM, *et al.***
*Defendants-Appellees*

**BRIEF OF DEFENDANTS-APPELLEES
ANDREW J. PALM, *et al.***

Appeal from the United States District Court for the District of Kansas
Case No. 19-CV-3178-EFM-ADM
Honorable Eric. F. Melgren, United States District Judge

OFFICE OF KANSAS ATTORNEY
GENERAL DEREK SCHMIDT
Michael J. Duenes, Assistant A.G.
120 SW 10th Ave, 2d Floor
Topeka, Kansas 66612
(785) 296-2215
michael.duenes@ag.ks.gov

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................ii

PRIOR OR RELATED APPEALS..............................................................v

GLOSSARY................................................................................vi

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF THE ISSUE .................................................................1

STATEMENT OF THE CASE ..................................................................1

SUMMARY OF ARGUMENT ...................................................................8

ARGUMENT ...............................................................................9

Standard of Review ......................................................................9

Discussion.............................................................................11

    A.   The qualified immunity standard. ........................................11

    B.   Grissom failed to establish a violation of his Eighth Amendment rights...................................................13

    C.   Because Officer Palm did not violate Grissom's Eighth Amendment rights, Officer Loewen was also entitled to qualified immunity..................................................25

CONCLUSION .............................................................................26

CERTIFICATE OF COMPLIANCE..............................................................27

CERTIFICATE OF DIGITAL SUBMISSION .....................................................27

CERTIFICATE OF SERVICE.................................................................27

10th Cir. R. 28.2(B) ATTACHMENTS.......................................................28

Fed. R. App. P. Rule 28(f) ATTACHMENTS ................................................28

# TABLE OF AUTHORITIES

Cases

Page(s)

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1998) ............................................................. 10

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ............................................................................ 12

*Brown v. Smith*,
813 F.2d 1187 (11th Cir. 1987) ........................................................... 19

*City of Escondido, Cal. v. Emmons*,
139 S. Ct. 500 (2019) .......................................................................... 13

*Colbruno v. Kessler*,
928 F.3d 1155 (10th Cir. 2019) ..................................................... 12, 22

*Cortez v. McCauley*,
478 F.3d 1108 (10th Cir. 2007) ..................................................... 17, 22

*Davis v. Scherer*,
468 U.S. 183 (1984) ............................................................................ 14

*Estate of Booker v. Gomez*,
745 F.3d 405 (10th Cir. 2014) ............................................................. 25

*Estate of Read v. Rodriguez*,
824 F.3d 960 (10th Cir. 2016) ............................................................. 11

*Evans v. Heimgartner*,
811 Fed. Appx. 505 (10th Cir. 2020) ................................................... 19

*Fogarty v. Gallegos*,
523 F.3d 1147 ................................................................................ 5, 25

*Grissom v. Roberts*,
902 F.3d 1162 (10th Cir. 2018) ........................................................... 12

*Gutteridge v. Oklahoma,*
   878 F.3d 1233 (10th Cir. 2018) ............................................................ 12

*Hall v. Bellmon,*
   935 F.2d 1106 (10th Cir. 1991) ............................................................ 10

*Hastings v. Campbell,*
   47 Fed. Appx. 559 (10th Cir. 2002) ...................................................... 10

*Holden v. Hirner,*
   663 F.3d 336 (8th Cir. 2011) ................................................................ 25

*Hooks v. Atoki,*
   983 F.3d 1193 (10th Cir. 2020) ............................................................ 10

*Howard v. Nunley,*
   465 Fed. Appx. 669 ............................................................................... 23

*Hudson v. McMillian,*
   503 U.S. 1 (1992) ............................................................................ 14, 21

*Johnson v. Lappin,*
   478 Fed. Appx. 487 (10th Cir. 2012) .................................................... 23

*Kisela v. Hughes,*
   138 S. Ct. 1148 (2018) .......................................................................... 12

*Leggett v. George,*
   53 F.3d 342 (Table), 1995 WL 265931 (10th Cir. 1995) ...................... 22

*Lehman v. McKinnon,*
   2021 WL 4129229 (10th Cir. Sept. 10, 2021) ................................. 19, 25

*Marshall v. Milyard,*
   415 Fed. Appx. 850 (10th Cir. 2011) .................................................... 19

*Marshall v. Wiebe,*
   2018 WL 1806760 (D. Kan. April 17, 2018) ........................................ 16

*May v. Segovia,*
   929 F.3d 1223 (10th Cir. 2019) ........................................................... 10

*McCoy v. Meyers,*
   887 F.3d 1034 (10th Cir. 2018) ........................................................... 10

*Medina v. Cram,*
   252 F.3d 1124 (10th Cir. 2001) ........................................................... 11

*Mitchell v. Maynard,*
   80 F.3d 1433 (10th Cir. 1996) ............................................................. 21

*Mullenix v. Luna,*
   577 U.S. 7 (2015) ..................................................................... 12, 24

*Northington v. Jackson,*
   973 F.2d 1518 (10th Cir. 1992) ........................................................... 14

*Passmore v. Ianello,*
   528 Fed. Appx. 144 (3d Cir. 2013) ....................................................... 23

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ....................................................................... 12

*Pittman v. Kurtz,*
   165 F. Supp. 2d 1243 (D. Kan. 2001) ..................................................... 20

*Redmond v. Crowther,*
   882 F.3d 927 (10th Cir. 2018) ................................................... 13, 15, 19

*Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma,*
   978 F.3d 1165 (10th Cir. 2020) ........................................................... 23

*Sampley v. Ruettgers,*
   704 F.2d 491 (10th Cir. 1983) ..................................................... 15, 19

*Serna v. Colo. Dep't of,*
   455 F.3d 1146 (10th Cir. 2006) ........................................................... 13

*Swanson v. Fields,*
  1993 WL 537708 (10th Cir. 1993) ........................................................17

*Ullery v. Bradley,*
  949 F.3d 1282 (10th Cir. 2020) ............................................................17

*Vdare Foundation v. City of Colorado Springs,*
  11 F.4th 1151 (10th Cir. 2021) ............................................................11

*Vondrak v. City of Las Cruces,*
  535 F.3d 1198 (10th Cir. 2008) ............................................................17

*White v. Pauly*,
  137 S. Ct. 548 (2017) ....................................................................13, 24

*Whitley v. Albers,*
  475 U.S. 312 (1986) ......................................................................14, 21

Statutes

28 U.S.C. § 1291 .......................................................................................1
42 U.S.C. § 1983 ...................................................................................1, 6

Rules

Fed. R. Civ. P. 56(a) ..............................................................................10

## PRIOR OR RELATED APPEALS

None

# GLOSSARY

KDOC:     Kansas Department of Corrections

EDCF:     El Dorado Correctional Facility

OC:         Oleoresin Capsicum

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Kansas had jurisdiction over this case because Plaintiff, Richard Grissom, asserted claims under 42 U.S.C. § 1983. This appeal arises from the district court's October 4, 2021 order granting Defendants' motion to dismiss or for summary judgment. Grissom filed a timely notice of appeal on October 26, 2021. Under 28 U.S.C. § 1291, this Court has jurisdiction to hear Grissom's appeal, which comes from a final judgment disposing of all his claims.

## STATEMENT OF THE ISSUE

**The district court properly granted Officers Palm and Loewen qualified immunity on Grissom's Eighth Amendment claim (Grissom's Issues I-III).**

## STATEMENT OF THE CASE

Plaintiff-Appellant, Richard Grissom, was in the custody of the Kansas Department of Corrections ("KDOC") at El Dorado Correctional Facility ("EDCF") on November 25, 2017, when the events at issue occurred. (ROA, Vol. I at 17 [¶ 7], 129, 132).

### A.    *November 25, 2017 Incident*

On the evening of November 25, 2017, Officer Palm was on a security check in the A1 cellhouse at EDCF. (ROA, Vol. I at 818, Palm

1

Declaration at ¶ 3). As Palm looked in Grissom's cell, he observed a plastic bag with an unknown green leafy substance in it, which he believed could be dangerous contraband and potentially harmful to staff and other inmates. (ROA, Vol. I at 818, Palm Declaration at ¶ 4). Palm knew Grissom practiced Native American religious activities, so the bag could contain sage for such purposes. But Palm wanted to assure himself by seeing the bag. (ROA, Vol. I at 819, Palm Declaration at ¶¶ 5, 8).

Palm did not have keys to Grissom's cell but figured no troubles would arise from opening Grissom's cell door because, to Palm's knowledge, Grissom had no real history of disciplinary problems. (ROA, Vol. I at 819, Palm Declaration at ¶ 6). Once Grissom's cell was open, Palm asked to see the plastic bag. (ROA, Vol. I at 17-18 [¶¶ 9-11], 819, Palm Declaration at ¶ 7). However, Grissom insisted that Palm "[c]all Captain Mansfield down here because you're messing with me." (ROA, Vol. I at 17 [¶ 9]).

Grissom then gave Palm the bag but became upset at how he was handling it, again asking Palm to call Mansfield. (ROA, Vol. I at 18 [¶ 11]). Palm said he would return the bag if it did not contain contraband, but Grissom was not satisfied, and his body language shows he was

2

speaking forcefully with Palm.[1] (ROA, Vol. I at 18 [¶¶ 11, 14]; Video at 31:25-31:38). Grissom then reached for the bag, demanding that Palm give it back, but Palm snatched it back and put the bag in his pocket. (ROA, Vol. I at 18 [¶ 14], 819, Palm Declaration at ¶ 9).

When Grissom tried to grab the bag, Palm interpreted it as an aggressive move and responded by jumping back and assuming a defensive stance. (ROA, Vol. I at 819, Palm Declaration at ¶ 9; Video at 31:37-31:40). Palm also perceived Grissom's move as perhaps signaling the bag might contain something other than sage. (ROA, Vol. I at 819, Palm Declaration at ¶ 9). So Palm put the bag in his pocket and ordered Grissom to turn around and be handcuffed. (ROA, Vol. I at 819, Palm Declaration at ¶¶ 10-11). Palm wanted to take Grissom to see Mansfield, as he had been demanding, and Palm was concerned for his own safety due to Grissom's body language, tone, temperament, and his move to grab the bag out of Palm's hand. (ROA, Vol. I at 819, Palm Declaration at ¶ 10).

---

[1] The video from the November 25, 2017 incident was included in the *Martinez* Report as Exhibit C; ROA, Vol. III, and a copy was received by this Court on November 1, 2021. Defendants-Appellees cite the video as "Video at [Minute:Second-Minute:Second]," as displayed on the timer of the camera.

Grissom initially appeared as if he would comply with Palm's order to "cuff up," turning around as if to do so, but ultimately, Grissom kept turning to face Palm and refused to allow himself to be restrained. (ROA, Vol. I at 769, 820, Palm Declaration at ¶¶ 11-12; Video at 32:14-32:44). Moreover, Grissom was speaking aggressively, as evidenced by his body language, when he kept turning to talk to Palm. (ROA, Vol. I at 820, Palm Declaration at ¶¶ 11-12, 825-26, Loewen Declaration at ¶¶ 4-6; Video at 32:20-32:41).

Palm called for officer assistance, and Officer Loewen responded. (ROA, Vol. I at 820, Palm Declaration at ¶ 12, 825-26, Loewen Declaration at ¶ 4). The third time Grissom refused to be restrained, he forcefully ripped his left hand away from Palm, which Palm interpreted as another act of aggression. (ROA, Vol. I at 820, Palm Declaration at ¶ 17, Video at 32:42-32:44).

In response, Palm unsuccessfully attempted to push Grissom against the cell wall to secure him until a response team arrived. (ROA, Vol. I at 821, Palm Declaration at ¶¶18-20; Video at 32:43-32:46). Grissom wrestled free of Palm's grasp and turned and advanced toward Palm, who assumed a defensive fighting posture. (ROA, Vol. I at 20 [¶ 21], 821, Palm Declaration at ¶ 21; Video at 32:43-32:47). Palm, fearing

4

for his safety, pushed Grissom in an attempt to keep him in his cell. (ROA, Vol. I at 821, Palm Declaration at ¶ 21-22; Video at 32:45-32:49). Palm then tried to back out of Grissom's cell while offering a few defensive jabs as Grissom kept advancing toward him. (ROA, Vol. I at 821, Palm Declaration at ¶¶ 21-22; Video at 32:46-32:55). Because Grissom was not heeding Palm's verbal commands, Palm used a burst of OC spray on him.[2] (ROA, Vol. I at 821, Palm Declaration at ¶ 23).

Even after the burst of OC spray, Grissom pursued Palm into the walkway outside his cell and landed a punch to Palm's head. (ROA, Vol. I at 821, Palm Declaration at ¶¶ 23-24; Video at 32:55-32:58). A scuffle ensued, and Grissom was able to get his arms around Palm's upper body. (ROA, Vol. I at 20 [¶ 22]; 821, Palm Declaration at ¶ 24; Video at 32:58-33:15). As Grissom did so, he tried to lift Palm off the ground, pushing him toward the second floor railing in an apparent attempt to throw him over. (ROA, Vol. I at 821, Palm Declaration at ¶ 24; 824, Mansfield Declaration at ¶ 7; 826, Loewen Declaration at ¶ 9; Video at 33:02-33:15).

---

[2] Oleoresin capsicum ("OC") is a chemical agent commonly referred to as pepper spray or mace. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1152, n. 4 (10th Cir. 2008). Here, Defendants will refer to it as OC spray.

As Grissom tried to wrestle Palm toward the railing, Palm struck Grissom on the back of his head and his upper back with the OC spray can and sprayed Grissom in the eyes with the spray. (ROA, Vol. I at 822, Palm Declaration at ¶ 25; Video at 33:02-33:20). Officer Loewen also tried to pull Grissom off Palm. (ROA, Vol. I at 826, Loewen Declaration at ¶ 9; Video at 33:15-33:20). Ultimately, Grissom pulled Palm to the floor, where Palm sprayed him again with OC spray, and Loewen was able to get Grissom off Palm and back into his cell. (ROA, Vol. I at 822, Palm Declaration at ¶ 26; Video at 33:13-33:21).

After Grissom was secured, medical staff examined him and found abrasions (scrapes), knots, and scratches on portions of his left hand, right leg, upper body, and head. (ROA, Vol. I at 804-08). Based on the findings from a disciplinary hearing, Grissom was found guilty of battery and disobeying orders. (ROA, Vol. I at 151-56). An internal prison investigation also found that Palm had applied an amount of force that was unnecessary under the circumstances, and he received a three-day suspension. (ROA, Vol. I at 134).

### B.    *Procedural History*

On September 12, 2019, Grissom filed his 42 U.S.C. § 1983 claim alleging KDOC correctional officers subjected him to excessive force

6

under the Eighth Amendment and retaliated against him by placing him in administrative segregation, in violation of his First Amendment rights. (ROA, Vol. I at 27-29). He also claimed he suffered assault and battery under Kansas law and had some of his personal property destroyed. (ROA, Vol. I at 27-28).

KDOC later filed a *Martinez* Report. (ROA, Vol. I at 126). Defendants then moved for dismissal, or in the alternative, for summary judgment. (ROA, Vol. I at 763). Grissom filed a response, to which Defendants replied. (ROA, Vol. I at 850, 894). The district court granted summary judgment for Defendants on October 4, 2021. (ROA, Vol. I at 908-19). The court found that Grissom's response to Defendants' motion "essentially addressed none of [the] issues" raised by Defendants, was "limited to presenting a few factual assertions, and is devoid of any legal argument." (ROA, Vol. I at 915). Further, the court found that Grissom only presented facts that were potentially relevant to his excessive force claim, and thus, it "grant[ed] as uncontested the defendants' motion as to all other issues." (ROA, Vol. I at 915).

On the excessive force issue, the court held that Defendants Palm and Loewen were entitled to qualified immunity. (ROA, Vol. I at 915-18). The court found there were no medical orders prior to the incident

requiring the use of extra-length handcuffs on Grissom. (ROA, Vol. I at 917). Moreover, the court held that whatever the substance in his plastic bag, "Grissom had no right to physically resist Palm or to commit an assault on him. Even if [Grissom's] factual assertions were true, it would not justify what the video confirms to be his aggression and violent assault on Palm." (ROA, Vol. I at 917). Finally, the court held that "the video and medical evidence demonstrate Palm did not beat Grissom[,]" so there was no constitutional violation. (ROA, Vol. I at 917-18).

Grissom timely appeals. (ROA, Vol. I at 921).

## SUMMARY OF ARGUMENT

The district court properly found that Officers Palm and Loewen were entitled to qualified immunity, and its decision should be affirmed.

Grissom failed to establish a violation of his Eighth Amendment rights. Palm's attempt to restrain Grissom with standard handcuffs did not constitute excessive force because Grissom had no medical order entitling him to the use of specialized handcuffs, and he suffered no injury because of the handcuffs. In addition, Palm's use of force against Grissom was necessary in light of Grissom's resistance to being restrained and his assault on Palm. Palm used a proportionate amount

of force for the sole purpose of controlling Grissom and restoring order. Moreover, any injuries sustained by Grissom were *de minimis*.

Grissom also failed to show that an objectively reasonable officer could have thought Palm's conduct violated the Constitution. In other words, Grissom cannot show that every reasonable corrections officer would have understood that Palm's attempt to handcuff him and Palm's grappling with him and using chemicals to subdue him were constitutionally prohibited.

Finally, because Grissom did not demonstrate an Eighth Amendment violation, Loewen cannot be held liable for failing to intervene on Grissom's behalf. Further, Grissom has not shown that Loewen knew, but disregarded, an excessive risk to Grissom's health or safety. The district court's order in favor of Defendants was correct and should be affirmed in its entirety.

## ARGUMENT

**The district court properly granted Officers Palm and Loewen qualified immunity on Grissom's Eighth Amendment claim (Grissom's Issues I-III).**

### Standard of Review

This Court reviews orders granting qualified immunity on summary judgment *de novo* and applies the same standard used by the

district court. *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020); *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *McCoy*, 887 F.3d at 1044. This Court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *McCoy*, 887 F.3d at 1044.

Facts must be identified by reference to affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Relying on mere pleadings or conclusory allegations is not enough. *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, "while courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 Fed. Appx. 559, 560 (10th Cir. 2002) (citing *Hall*, 935 F.2d at 1110); *see McCoy*, 887 F.3d at 1044. ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (Internal quotations omitted)).

10

## Discussion

Grissom purports to raise three distinct issues in his opening brief. (Opening Br. at 4, 6). However, they are subsumed under the single question of whether the district court properly found Defendants Palm and Loewen to be entitled to qualified immunity. This Court should answer in the affirmative.

### A.    *The qualified immunity standard*

This Court reviews summary judgment orders deciding qualified immunity questions in a different manner than other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). To defeat qualified immunity, the plaintiff must satisfy a "strict two-part test" by "demonstrat[ing] on the facts alleged (1) that the defendant violated his constitutional … right[ ], and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity," such that "every reasonable official would have understood that what he is doing violates that right." *Vdare Foundation v. City of Colorado Springs*, 11 F.4th 1151, 1175 (10th Cir. 2021); *Estate of Read v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016). The court has discretion to analyze the two prongs in whatever order "in light of the circumstances in the

11

particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018).

Simply put, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *see Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (explaining that every reasonable officer must have understood that an officer's conduct was a violation of clearly established law); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (clearly established case law must answer the "constitutional question beyond debate."). A defendant does not bear the traditional burden to show the absence of a triable issue unless the plaintiff meets both elements. *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).

Federal precedent offers two avenues for determining whether challenged conduct violated clearly established constitutional rights: "The plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness

must be apparent." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal

citations and quotations omitted). The Supreme Court has re-emphasized

that "the clearly established right must be defined with specificity." *City*

*of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

## B. *Grissom failed to establish a violation of his Eighth Amendment rights.*

Grissom failed to satisfy the first prong of the qualified immunity

test because he has not established an Eighth Amendment violation

based on Palm's use of force in the face of Grissom's resistance and

violence.

The excessive force analysis involves two prongs: (1) an objective

prong asking "if the alleged wrongdoing was objectively harmful enough

to establish a constitutional violation," and (2) "a subjective prong under

which the plaintiff must show that prison officials acted with a

sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927,

936 (10th Cir. 2018). "The core inquiry for an Eighth Amendment

excessive force claim is whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause

harm." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1152 (10th Cir. 2006)

(internal quotation marks omitted).

"Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above *de minimis* uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation[,]" provided that the force used is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). While the presence of an injury is not required, the presence or absence of an injury is a factor in the determination of whether a prison official's conduct constituted an objectively serious use of force. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).

Moreover, "[t]he infliction of pain in the course of a prisoner security measure … does not amount to cruel and unusual punishment simply because it appears in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence, unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

In analyzing whether prison officials acted in good faith or maliciously and sadistically, courts consider (1) the need for the

14

application of force; (2) the relationship between the need and the amount of force used; and (3) the extent of injury inflicted. *Redmond*, 882 F.3d at 937; *Sampley v. Ruettgers*, 704 F.2d 491, 495-96 (10th Cir. 1983).

Analysis of the above factors show that no constitutional wrong occurred here. On the undisputed facts, Palm did not use excessive force in his attempt to handcuff Grissom, and Palm's defensive sparring with Grissom was done in a good-faith effort to gain control of him as he resisted restraint, not maliciously and sadistically to cause him harm. Further, Grissom's resistance made force necessary to gain his compliance, and Grissom's injuries were *de minimis*.

## 1. Palm's attempt to use standard handcuffs on Grissom did not constitute excessive force.

Grissom claims he "was approved for 'large' extra length cuffs or 'large' double cuffs whenever he was restrained[.]" (Opening Br. at 2). The record shows otherwise.

At the time of the incident, Grissom had no medical restrictions entitling him to the use of specialized handcuffs. (ROA, Vol. I at 809, 814-16; Vol. II at 75, 116-26). So Palm could not have known whether the handcuffs he was attempting to use put Grissom's wrist and shoulders in any particularly vulnerable position. Indeed, Palm noted his belief that

Grissom had no medical restriction prohibiting the restraints Palm was trying to use. (ROA, Vol. I at 820, Palm Declaration at ¶ 14). Palm sought to restrain Grissom in the only handcuffs Grissom was medically entitled to—restraints which had worked fine for Grissom on the numerous other occasions Palm had restrained him. (ROA, Vol. I at 820, Palm Declaration at ¶ 15). Hence, it cannot be said that Palm acted maliciously and sadistically in attempting to use standard handcuffs. *See Marshall v. Wiebe*, No. 16-3014-EFM-KGS, 2018 WL 1806760, at *6 (D. Kan. April 17, 2018).

Grissom also fails to meet the objective prong of the excessive force test. Again, Grissom's claim that he was approved for large, extra-length cuffs or large double cuffs is contradicted by the evidence. Moreover, the video shows that Palm was never able to actually restrain Grissom. (Video at 32:40-32:44). And Grissom did not ripped his arm violently away from Palm as Palm attempted to handcuff merely "twist his body to free his arm," as he alleges. (Opening Br. at 3). Rather, he him. (Video at 32:42-32:44). There is no evidence the handcuffs cut into Grissom's skin, left any marks, or caused any other injury. The medical examination after the altercation shows that Grissom made no specific

16

complaints about injuries to his wrist and noted no such visible injuries. (ROA, Vol. I at 804-08).

Therefore, any alleged use of force pertaining to the handcuffs is *de minimis*. In similar cases, this Court has so found. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) ("when an excessive force claim relies upon unduly tight handcuffing … the plaintiff must show 'some actual injury'" to state a claim); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (fleeting discomfort or redness caused by tight handcuffing is *de minimis* as a matter of law); *Swanson v. Fields*, No. 93-3083, 1993 WL 537708, at *6 (10th Cir. 1993) (placing plaintiff in "tight handcuffs does not rise to the level of a constitutional violation").

The handcuffing used on Grissom was certainly not "repugnant to the conscience of mankind," as there was no "wanton infliction of pain." *See Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020); Black's Law Dictionary (11th ed. 2019) (defining "wanton" as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences"). This Court should find that Palm did not use excessive force in his attempt to handcuff Grissom.

**2. Palm's defensive sparring with Grissom was a good faith effort to maintain and restore discipline.**

*a. Application of force was necessary.*

There is no genuine dispute as to whether Grissom violated prison rules, disobeyed orders, and resisted Palm and Loewen. (ROA, Vol. I at 156; Video at 31:30-33:30). Grissom created a disturbance by demanding to see Captain Mansfield and then attempting to grab the plastic bag from Palm's hand. (ROA, Vol. I at 819, Palm Declaration at ¶¶ 7, 9). Indeed, the disturbance can clearly be seen as other inmates start to gather below Grissom's cell to watch. (Video at 32:00-32:42). Moreover, because of Grissom's actions, Palm had to call for another officer to assist him. (ROA, Vol. I at 820, Palm Declaration at ¶ 12).

Grissom repeatedly refused to allow himself to be restrained so he could be taken to Mansfield's office to discuss the issue. (ROA, Vol. I at 819-21, Palm Declaration at ¶¶ 11-17). Grissom resisted, made demands, and became increasingly aggressive in his tone and body language. (Video at 31:25-32:43). When Grissom ripped his left hand away from Palm, it was clear he was not going to submit to being handcuffed. (Video at 32:43-32:44). Force was not used until Grissom spent nearly two minutes engaging in increasingly aggressive discussion with Palm;

attempted to snatch the bag from Palm's hand; three times refused to be handcuffed; and ripped his hand away from Palm.

In order to maintain control of inmates, prison guards "must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess" themselves. *Lehman v. McKinnon*, No. 20-1312, 2021 WL 4129229, at *2 (10th Cir. Sept. 10, 2021) (quoting *Sampley*, 704 F.2d at 496). Thus, "we afford them wide-ranging deference." *Id.* (quoting *Redmond*, 882 F.3d at 938). Here, Palm had to make such a decision, and the evidence shows he used force in a good faith effort to maintain or restore discipline.

### b. *The amount of force used was proportionate.*

The amount of force used on Grissom was appropriate under the circumstances. *See Evans v. Heimgartner*, 811 Fed. Appx. 505, 505-06 (10th Cir. 2020) (affirming summary judgment based on qualified immunity where correctional officers used pepper spray on a resisting Evans); *Marshall v. Milyard*, 415 Fed. Appx. 850, 853 (10th Cir. 2011) (collecting cases showing comparable uses of force did not support an Eighth Amendment excessive force claim). *See also Brown v. Smith*, 813 F.2d 1187, 1189 (11th Cir. 1987) (holding that guard's placing of his riot baton under inmate's neck and pinning him up against a wall was an

19

appropriate degree of force where inmate refused to enter his cell when ordered to do so); *Pittman v. Kurtz*, 165 F. Supp. 2d 1243, 1246 (D. Kan. 2001) (finding assertions that guards punched inmate in head and beat his head against the floor failed to show excessive force).

Here, Grissom spoke aggressively to Palm, attempted to grab an item from Palm's hand, refused to allow himself to be restrained, and forcefully ripped his hand from Palm as he tried to apply handcuffs. Only then did Palm attempt to secure Grissom against the wall of his cell. (*See* video at 31:35-32:46). Then, as Grissom advance on him, Palm gave defensive jabs and used OC spray. This was reasonable under the circumstances, given Grissom's resisting, threatening, and combative conduct. (ROA, Vol. I at 820-21, Palm Declaration at ¶¶ 17-21; Video at 32:45-32:55). Grissom concedes that Palm never landed a punch on him because he was blocking them. (ROA, Vol. I at 20 [¶¶ 20-21]). After Grissom punched Palm in the head, grabbed his upper body and leg, and began pushing him toward the second floor railing, Palm reasonably defended himself by striking Grissom in the head with his OC spray can, spraying Grissom again, and grappling with Grissom in an attempt to get free of his grasp. (ROA, Vol. I at 821-22, Palm Declaration at ¶¶ 24-26); Video at 32:56-33:20).

Palm's actions were not excessive in this instance, and they certainly were not "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. And even if, in hindsight, Palm might have responded differently, that conclusion does not, by itself, establish a constitutional violation. Because Grissom must show "obduracy and wantonness" on Palm's part, it is not sufficient that "it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence, unnecessary in the strict sense." *Whitley*, 475 U.S. at 319.

In response to summary judgment, Grissom failed to come forth with any evidence that Palm acted with malicious and sadistic intent. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Nor does such intent appear on the uncontroverted facts existing on summary judgment. Hence, this Court should find that Palm's use of force was reasonable and proportionate under the circumstances.

c. *Any injury sustained by Grissom was minimal.*

Here, Grissom's injuries were *de minimis*, consisting of scrapes, bruising, knots on his scalp, some dizziness, and slight blurry vision as a result of the altercation. (ROA, Vol. I at 804-08). And as the video evidence shows, Grissom's injuries resulted from Palm defending himself

21

from Grissom's own actions and were not "more severe than would be common in any struggle that left the loser pinned to the floor." *Leggett v. George*, 53 F.3d 342 (Table), 1995 WL 265931, at *2 (10th Cir. 1995). Indeed, in his opening brief, Grissom does not argue that he suffered any injury stemming from the incident. Consequently, Grissom has not met his burden of establishing an Eighth Amendment violation.

### 3. No clearly established law put Palm on notice that his actions were constitutionally impermissible.

Grissom has failed to satisfy his burden on the "clearly established constitutional rights" prong of the qualified immunity standard. To do so, Grissom must show not only that Palm violated his federally secured rights (which he cannot show, as explained above), but also that an "objectively reasonable officer[ ] could not have thought the [conduct] constitutionally permissible[.]" *Cortez*, 478 F.3d at 1128. Thus, Grissom must demonstrate "there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as [Grissom] maintains." *Colbruno*, 928 F.3d at 1161.

Here, Grissom failed to cite any Supreme Court or Tenth Circuit precedent (or the weight of other authority) holding that Palm could not

use standard handcuffs on him when he had no medical order dictating that he be restrained with specialized handcuffs and when there was no injury caused by the handcuffs. Indeed, Tenth Circuit precedent suggests that, absent a medical order, an inmate is not entitled to special medical exceptions. *See*, *e.g.*, *Johnson v. Lappin*, 478 Fed. Appx. 487, 492 (10th Cir. 2012) (holding that prison officials were entitled to qualified immunity when they exposed inmate to minor amounts of outdoor smoke because inmate had no medical order to be placed in a smoke-free environment).

Officers are also justified in using some force against a resisting arrestee to gain compliance, as Palm did with Grissom here. *See Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma*, 978 F.3d 1165, 1173 (10th Cir. 2020) ("[T]he 'level of force necessary to gain compliance['] … is justified").

Further, authority from other jurisdictions establishes that Grissom did not have a clearly established right to be free from OC spray while resisting officers. *See Passmore v. Ianello*, 528 Fed. Appx. 144, 148 (3d Cir. 2013) (finding use of pepper spray reasonable when prisoner resisted direct orders to take a shower pursuant to prison policy); *Howard v. Nunley*, 465 Fed. Appx. 669, 670 (9th Cir. 2012 (finding use of pepper

spray did not amount to Eighth Amendment violation after prisoner resisted officers and disobeyed orders to stop pounding on his cell door).

The Supreme Court has repeatedly instructed federal courts not to define clearly established law at a high level of generality. *White*, 137 S. Ct. at 552; *Mullenix*, 577 U.S. at 12. "The dispositive question is whether the violative nature of *particular* conduct is clearly established," which "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (internal quotations omitted).

Here, the proper inquiry is whether *every* reasonable corrections officer would have understood that attempting to handcuff an inmate (who had no medical order for special handcuffs) with standard handcuffs, as well as grappling with and spraying OC on the inmate as he actively resisted restraint and assaulted the officer, counts as a constitutional violation. Not only were these contours not clearly established, but the law was to the contrary.

The district court properly found that Grissom failed to meet his burden of demonstrating that Palm's use of force violated his Eighth Amendment rights. It also correctly held that Grissom produced no case finding a constitutional violation under similar circumstances, and

therefore, could not overcome Palm's qualified immunity. This Court should affirm.

### C. Because Officer Palm did not violate Grissom's Eighth Amendment rights, Officer Loewen was also entitled to qualified immunity.

A prison official can be liable under the Eighth Amendment if he or she had a reasonable opportunity to intervene in an Eighth Amendment violation and refused to do so. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (applying principle in Fourth Amendment context). Grissom's claim against Loewen fails on two separate grounds.

First, Grissom's allegations do not adequately allege an Eighth Amendment violation, and thus, Loewen cannot be held liable for failing to intervene as a matter of law. *See Lehman*, 2021 WL 4129229 at \*4 ("[F]or there to be a failure to intervene, it logically follows that there must be an underlying constitutional violation." (internal quotation marks omitted)).

Second, even were Grissom able to demonstrate an Eighth Amendment violation, an inmate must show that based on the circumstances, the officer who allegedly failed to intervene knew, but disregarded, an excessive risk to the inmate's health or safety. *See Estate of Booker v. Gomez*, 745 F.3d 405, 433 (10th Cir. 2014); *Holden v. Hirner*,

663 F.3d 336, 341 (8th Cir. 2011) (prisoner must "prove official both knew of and disregarded 'an excessive risk to inmate health and safety'").

Here, Loewen stated his view that it was Palm, rather than Grissom, who needed protecting in this situation. (ROA, Vol. I at 826, Loewen Declaration at ¶ 8). The video evidence confirms this assessment. Thus, Grissom has not shown, and cannot show, that Loewen knew but disregarded any excessive risk to Grissom's health and safety. This Court should affirm that Loewen is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Cook respectfully asks this Court to affirm the district court's October 4, 2021 order granting summary judgment in favor of Officers Palm and Loewen.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ *Michael J. Duenes*
Michael J. Duenes (KS No. 26431)
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
*Attorney for Defendant-Appellee*

26

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 5,278 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface—14-point Century Schoolbook—using Microsoft Word.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing BRIEF OF DEFENDANTS-APPELLEES, as submitted in digital form via the court's ECF system, is an exact copy of the written document filed with the Clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2022, the foregoing BRIEF OF DEFENDANTS-APPELLEES was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system. I certify that I caused seven paper copies to be delivered by Federal Express to the Clerk's Office within five business days of this filing. I further certify that I cause one paper copy to be deposited in the United States Mail, first-class postage prepaid to:

Mr. Richard Grissom, # 33728
Lansing Correctional Facility
P.O. Box 2
Lansing, KS 66043
*Appellant Pro Se*

DATED: January 7, 2022                     /s/ *Michael J. Duenes*
                                           Michael J. Duenes
                                           Assistant Attorney General

# ATTACHMENTS

## 10th Cir. R. 28.2(B) ATTACHMENTS

Addendum A          District Court Order (Doc. 65)

Addendum B          Judgment (Doc. 66)

## Fed. R. App. P. Rule 28(f) ATTACHMENTS

Addendum C          Fed. R. Civ. P. 56

16-IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD GRISSOM,
                Plaintiff,

      vs.                                    No. 19-3178-EFM

ANDREW J. PALM, *et al.*,
                Defendants.


MEMORANDUM AND ORDER


State of Kanas prison inmate Richard Grissom brings the present action against numerous officers of the El Dorado Correctional Facility (EDCF) based on a November 25, 2017 incident.  Grissom alleges that during the incident EDCF officers subjected him to excessive force, and that his subsequent placement in administrative segregation was retaliatory and a violation of his First Amendment rights.[1] Defendants have moved to dismiss the action, or in the alternative for summary judgment.


**Findings of Fact**

Because Defendants submitted additional evidentiary materials on the incident, including a security camera videotape, the pending motion will be construed as a

---

[1] Although he appears *pro se*, Grissom has extensively litigated his conditions of his confinement. *See Grissom v. Werholtz*, No. 07-3302-SAC, 2012 WL 3732895 (D. Kan. August 28, 2012), *aff'd*, 524 F. App'x. 467 (10th Cir. 2013); *Grissom v. Roberts*, No. 15-3221-JTM, 2017 WL 3130591, *7 (D. Kan. July 24, 2017), *aff'd*, 902 F.3d 1162 (10th Cir. Aug. 29, 2018); *Grissom v. Bell*, No. 20-3163 (D. Kan.).

motion for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]6

The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[4] Such a movant "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[5] The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7] Conclusory allegations are not sufficient to create a dispute as to

---

[2] Fed. R. Civ. P. 56(a).

[3] *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017)..

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986))..

[5] *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325)..

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). See D. Kan. Rule 7.4.

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

an issue of material fact.[8] The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the non-moving party."[9]

The evidentiary record supports the following findings. The court excludes requested findings which are not supported by specific reference to admissible evidence, or are not material to the issues in the action.

On November 25, 2017, Officer Andrew Palm conducted an accountability/security check in A1 cellhouse at EDCF. At Grissom's cell, Palm saw a green leafy substance. It is uncontroverted that Palm was concerned the substance might be contraband.

Since he did not have a set of pass keys at the time, Palm asked the control booth to open the door. To Palm's knowledge, Grissom had little disciplinary history and little to no problem history, and he did not believe that opening the door would present a problem. Palm asked Grissom to hand him the bag.

Grissom responded in a loud, aggressive, and defiant manner, telling him, "Call Captain Mansfield down here, you're messing with me." Grissom handed Palm the bag but became upset at the way Palm was handling it.

Palm tried to deescalate the situation by telling Grissom that after he examined the bag he would return it if it was not contraband.

---

[8] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

3

It is uncontroverted that Grissom was unsatisfied and continued to argue and make demands to see Captain Mansfield. Grissom then reached for the bag, saying "then give me that back," but Palm snatched it back.

Palm saw Grissom's attempt to forcefully remove something from his hands as an act of aggression, and increased his concern about what as in the bag. Palm ordered the 5'11", 215-pound Grissom to turn around so that he could be restrained, allowing him to be taken to the Captain's Office as he had been demanding. Palm also believed it was necessary to restrain Grissom to ensure his own safety, based on Grissom's tone, temperament, body language, and the fact that Grissom had just tried to forcefully remove something from his hands.

Grissom initially complied and turned around acting as though he was going to "cuff up." However, he refused to place both of his arms behind his back or to turn his wrist so that the cuff could be applied. Grissom claims in response it was because of an injury or problem with his shoulder. Because Grissom's wrist was turned in such a way that would have made it difficult if not impossible to apply the restraint, Officer Palm ordered Grissom to turn his wrist.

At that point, Grissom turned towards Officer Palm in an aggressive manner and started yelling. Palm again ordered Grissom to turn around and be restrained, but Grissom continued to refuse and repeated his aggressive actions.

Concerned for his safety, Palm issued an "officer needs assistance" call. Grissom then acted as though he was going to comply by turning his body around. However, he

4

again refused to cooperate with the restraint process, moving his arm in a back and forth motion and refusing to turn his wrist to allow the first handcuff to be secured on his wrist.

Grissom had been restrained by Palm in the past and on those occasions Officer Palm had no trouble placing Grissom in two sets of standard handcuffs with Grissom's arms behind his back and his wrists in the proper position.[10]

When Grissom resisted the restraints for a third time, aggressively yanking his arm away and turning towards Palm, Palm took this as an act of aggression. Palm was concerned Grissom was going to continue to resist, and that even if he did get one cuff on, Grissom might continue to resist and then would have one cuff that could potentially be used as a weapon.

Palm tried to place Grissom against the cell wall to allow for the response team to arrive to assist in the restraint. Grissom resisted and turned aggressively causing the cuffs to fly across the room. Grissom has claimed that during this struggle Palm tried to hit him with the cuffs, but the video of the incident shows plainly that Palm did not in fact strike Grissom with the handcuffs.

---

[10] Grissom attempts to controvert the fact, contending Palm knew he should use extra length cuffs. But the evidence is otherwise controverted that at that time (unlike later) there were no medical orders for such cuffs, and Grissom himself has acknowledged that Palm was aware of the need for "using the larger cuffs, *or a double set of cuffs* at once." (Dkt. 56-1, at 13, 18) (emphasis added). Grissom makes no attempt to controvert the fact (Def. ¶ 26) that Palm had two pairs of cuffs which he intended to use, but was thwarted by Grissom's refusal to comply with the restraint procedure

Palm realized he had misjudged Grissom's size and strength and took a fighting stance to protect himself from Grissom's punches. Palm exited the cell as soon as he determined the incoming strikes had stopped enough so that he could retreat.

Instead of retreating back into his cell, Grissom followed Officer Palm as he backed out of the cell. Because verbal commands had been insufficient, Palm administered a burst of *oleoresin capsicum* (OC) pepper spray.[11] Grissom followed Palm outside the cell into the walkway, striking Palm with his fists.

The video confirms the testimony of three witnesses that Grissom wrapped his arms around Palm's upper body in order to throw Palm over the second floor railing to the concrete floor below. Grissom that his actual plan was merely to "body slam … Palm against the second tier concrete floor."[12] The plaintiff does not controvert that, to protect himself, Palm struck Grissom with his OC can and sprayed Grissom in the eyes with the OC spray.

At no point did Grissom remain standing against the wall to be restrained. From the time Palm opened the cell door, Grissom did not retreat into the cell until after Palm used multiple bursts of OC spray. After Grissom was secured, he was examined by medical staff and found to have abrasions (scrapes), knots, and scratches on various parts of his right leg, upper body, and head.

---

[11] *See Fogarty v. Gallegos*, 523 F. 3d 1147, 1152 n. 4 (10th Cir. 2008) (discussing effect of OC spray as "causing both pain at the point of impact and irritation of the targeted individual's eyes and breathing passages").

[12] Dkt. 56-1, at 3 ¶ 17. *See* Palm Aff. at ¶ 24; Mansfield aff. at ¶ 7; Loewen Aff. at ¶ 9.

6

On November 25, 2017, Grissom was placed in administrative segregation at EDCF for the November 25, 2017 battery on Palm and pending his disciplinary hearing. A "central monitor" was put into place between Grissom and Palm to ensure that Grissom was not housed at any facility at which Palm was employed. To ensure the safety and security of the EDCF, Grissom was transferred to the Hutchinson Correctional Facility (HCF) for long-term administrative segregation.

Based on his conduct during the November 25, 2017 incident, Grissom was found guilty of the charges of battery and disobeying orders.

Prior to the incident Officer Palm had no formal disciplinary history, and he had never reassigned to a different cell house because of issues with inmates.

**Conclusions of Law**

Defendants moved for dismissal or summary judgment, contending (1) Grissom's official capacity claims are barred by the Eleventh Amendment, (2) that there is no evidence showing any retaliatory intent in the administrative segregation after the incident, (3) that plaintiff has failed to show defendants Schnurr, Mansfeld, or Randolph had any personal involvement in the segregation, (4) that defendants Palm and Loewen are entitled to qualified immunity on plaintiff's claims of excessive force, (5) that the court should decline to exercise supplemental jurisdiction over plaintiff's state law assault claims or find such claims time-barred, and (6) that plaintiff's claims for punitive damages are unjustified under the facts.

Grissom's Response[13] essentially addresses none of these issues. Indeed, the Response is limited to presenting a few factual assertions, and is devoid of any legal argument. The facts Grissom which does present are relevant, or at least potentially relevant, only as to the issue of excessive force. Plaintiff makes no effort at all to counter defendants' arguments seeking dismissal of the other claims in the action. Accordingly, the court grants as uncontested the defendants' motion as to all other issues.[14]

"[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment."[15] Prison officers violate the Eighth Amendment if they subject an inmate to the "unnecessary and wanton infliction of pain."[16] An inmate advancing such a claim must prove both objective component and subjective components. As to the first, plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."[17] To establish the subjective component, the plaintiff must show that defendants "act[ed] with a sufficiently culpable state of mind."[18]

Given the uncontroverted facts, the court finds defendants are entitled to qualified immunity. Public officers enjoy a qualified immunity to suit under § 1983,

---

[13] Dkt. 56-1.

[14] *See* D. Kan. R. 7.4.

[15] *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014)

[16] *Whitley v. Albers*, 475 U.S. 312, 319 (1986)..

[17] *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (not "every malevolent touch by a prison guard gives rise to a federal cause of action.")

[18] *Id*. at 1212.

which applies "unless their conduct was unreasonable in light of clearly established law." Qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law."[19]

Once Palm and Loewen raised the defense, the burden shifted to Grissom to prove (1) their actions violated a federal constitutional or statutory right, and (2) that the right was clearly established at the time of the unlawful conduct.[20] A right is "clearly established" if Supreme Court or Tenth Circuit precedent (or the weight of authority from other circuits) would put reasonable officers in the defendants' position on notice they were violating the Fourth Amendment.[21] This does not require the existence of a case exactly on point,[22] but does require that the existing caselaw be sufficiently clear to place the constitutional issue "beyond debate."[23]

The court has the discretion to determine the order in which these requirements are addressed;[24] immunity exists if either element is absent.[25] Only when a plaintiff

---

[19] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[20] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds, Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

[21] *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017).

[22] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[23] *White v. Pauly*, 137 S.Ct. 548, 551 (2017).

[24] *Pearson*, 555 U.S. at 236.

[25] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

satisfies this heavy burden must the defendant then satisfy the traditional summary judgment standard.[26]

In his response, Grissom stresses that under prison policy he was allowed some natural substances such as cedar or sage in connection with his Native American religion. He also contends that the condition of his shoulders and wrists required the use of extra-length handcuffs, and notes that a subsequent administrative review found Officer Palm erred in escalating the situation.

But it is also uncontroverted that there were then no medical orders requiring the use of extra-length cuffs. Grissom himself otherwise admits that at the time of the incident, the practice was to use either extra-length cuffs or use two sets of cuffs. It is also irrelevant whether the green substance was or was not actually contraband, Grissom had no right to physically resist Palm or to commit an assault on him.  Even if plaintiff's factual assertions were true, it would not justify what the video confirms to be his aggression and violent assault on Palm.

Contrary to Plaintiff's claims, the video and medical evidence demonstrate Palm did not beat Grissom. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

---

[26] *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019)

10

summary judgment."[27] Courts have used this standard to grant summary judgment in similar actions, where video evidence showed that no constitutional violation occurred.[28]

Finally, the fact that Palm may have been subsequently found partially at fault does not alter the qualified immunity analysis. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."[29] Grissom has pointed to no case finding a constitutional violation under similar circumstances, and thus the defendants are entitled to qualified immunity.[30]

---

[27] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[28] *See Bradshaw v. City of New York*, 855 Fed.Appx. 6, 9-10 (2d Cir. 2021) (upholding summary judgment as to prisoner's assertion guard punched him in the face as "fail[ing] in light of the contradictory video and medical evidence" which "conclusively shows that Loesch did not punch him"). *See also Emmett v. Armstrong*, 973 F.3d 1127, 1130–31 (10th Cir. 2020) (when the record "contains video evidence of the incident in question," the court "will accept the version of the facts portrayed in the video ... to the extent that it blatantly contradicts the plaintiff's version of events") (brackets & internal quotation marks omitted).

[29] *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (by itself "violation of a police department regulation is insufficient for liability under section 1983"). *See also Groh v. Ramirez*, 540 U.S. 551, 564 n. 7 (2004) (public officer is not "deprived of qualified immunity whenever he violates an internal guideline");

[30] To the contrary, *cf. Thompson v. Orunsolu*, 798 Fed.Appx. 288, 292 (10th Cir. 2020) (no constitutional violation for guard to use pepper spray against inmate who had grabbed the guard and refused orders to stop), *and Gargan v. Gabriel*, 50 F. App'x 920, 923 (10th Cir. 2002) (upholding dismissal in absence of evidence that the use of pepper spray in cell extraction was excessive), *with DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (finding constitutional violation where guard indiscriminately pepper sprayed inmates as a "practical joke").

IT IS SO ORDERED this 4th day of October, 2021, that the defendant's Motion to

Dismiss or for Summary Judgment (Dkt. 38) is GRANTED as provided herein.

This case is now closed.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

# United States District Court

-------------------------- DISTRICT OF KANSAS---------------------------

RICHARD GRISSOM,

          **Plaintiff,**

v.                                 **Case No:   19-3178-EFM**

ANDREW PALM, DANIEL SCHNURR,
MARIA BOS, DUSTIN RANDOLPH, ANDREW
FUOSS, PATRICK MANSFIELD, and
ABRAHAM LOEWEN,

          **Defendants,**

## JUDGMENT IN A CIVIL CASE

☐     Jury Verdict.   This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒     Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.  IT IS ORDERED

that pursuant to the Memorandum and Order, Doc. 65, filed on October 4, 2021, that Defendants' Motion to Dismiss or for Summary Judgment, Doc. 38, is GRANTED.

This case is closed.

    10/4/2021                           SKYLER O'HARA
          Date                              CLERK OF THE DISTRICT COURT

                                       by:  _s/  Cindy McKee_
                                            Deputy Clerk

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title VII. Judgment

Federal Rules of Civil Procedure Rule 56

Rule 56. Summary Judgment [Rule Text & Notes of Decisions subdivisions I to XV]

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 56 are displayed in multiple documents.>

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

**(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

**(c) Procedures.**

  **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

  **(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

  **(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

  **(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    **(1)** defer considering the motion or deny it;

    **(2)** allow time to obtain affidavits or declarations or to take discovery; or

    **(3)** issue any other appropriate order.

**(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

    **(1)** give an opportunity to properly support or address the fact;

    **(2)** consider the fact undisputed for purposes of the motion;

    **(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

    **(4)** issue any other appropriate order.

**(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

    **(1)** grant summary judgment for a nonmovant;

    **(2)** grant the motion on grounds not raised by a party; or

    **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

**(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

**(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 28, 2010, effective December 1, 2010.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. Report of the Commission on the Administration of Justice in New York State (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) § 14260) and Illinois (Smith-Hurd Ill.Stats. c. 110, §§ 181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment* (1929), 38 Yale L.J. 423.

**Note to Subdivision (d).** See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the Note thereto.

**Note to Subdivisions (e) and (f).** These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

1946 Amendment

**Note to Subdivision (a).** The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank v. Federal Reserve Bank of San Francisco*, N.D.Cal.1944, 58 F.Supp. 25, the plaintiff's countermotion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court or the service of preliminary motions of any kind will prolong that period even further. In many cases this merely represents unnecessary delay. See *United States v. Adler's Creamery, Inc.*, C.C.A.2, 1939, 107 F.2d 987. The changes are in the interest of more expeditious litigation. The 20-day period, as provided, gives the defendant an opportunity to secure counsel and determine a course of action. But in a case where the defendant himself makes a motion for summary judgment within that time, there is no reason to restrict the plaintiff and the amended rule so provides.

**Subdivision (c).** The amendment of Rule 56(c), by the addition of the final sentence, resolves a doubt expressed in *Sartor v. Arkansas Natural Gas Corp.,* 1944, 64 S.Ct. 724, 321 U.S. 620, 88 L.Ed. 967. See also Commentary, Summary Judgment as to Damages, 1944, 7 Fed.Rules Serv. 974; *Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co.,* C.C.A.2d, 1945, 147 F.2d 399, certiorari denied 1945, 65 S.Ct. 1201, 325 U.S. 861, 89 L.Ed. 1982. It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

**Subdivision (d).** Rule 54(a) defines "judgment" as including a decree and "any order from which an appeal lies." Subdivision (d) of Rule 56 indicates clearly, however, that a partial summary "judgment" is not a final judgment, and, therefore, that it is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. See *Leonard v. Socony-Vacuum Oil Co.,* C.C.A.7, 1942, 130 F.2d 535; *Biggins v. Oltmer Iron Works,* C.C.A.7, 1946, 154 F.2d 214; 3 *Moore's Federal Practice,* 1938, 3190-3192. Since interlocutory appeals are not allowed, except where specifically provided by statute, see 3 Moore, op. cit. supra, 3155-3156, this interpretation is in line with that policy, *Leonard v. Socony-Vacuum Oil Co.,* supra. See also *Audi Vision Inc. v. RCA Mfg. Co.,* C.C.A.2, 1943, 136 F.2d 621; *Toomey v. Toomey,* 1945, 149 F.2d 19, 80 U.S.App.D.C. 77; *Biggins v. Oltmer Iron Works,* supra; *Catlin v. United States,* 1945, 65 S.Ct. 631, 324 U.S. 229, 89 L.Ed. 911.

1963 Amendment

**Subdivision (c).** By the amendment "answers to interrogatories" are included among the materials which may be considered on motion for summary judgment. The phrase was inadvertently omitted from the rule, see 3 Barron & Holtzoff, *Federal Practice & Procedure* 159-60 (Wright ed. 1958), and the courts have generally reached by interpretation the result which will hereafter be required by the text of the amended rule. See Annot., 74 A.L.R.2d 984 (1960).

**Subdivision (e).** The words "answers to interrogatories" are added in the third sentence of this subdivision to conform to the amendment of subdivision (c).

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not suppositious, conclusory, or ultimate. See *Frederick Hart & Co., Inc. v. Recordgraph Corp.,* 169 F.2d 580 (3d Cir. 1948); *United States ex rel. Kolton v. Halpern,* 260 F.2d 590 (3d Cir. 1958); *United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc.,* 191 F.Supp. 383 (D.Del.1961); *Jamison v. Pennsylvania Salt Mfg. Co.,* 22 F.R.D. 238 (W.D.Pa.1958); *Bunny Bear, Inc. v. Dennis Mitchell Industries,* 139 F.Supp. 542 (E.D.Pa.1956); *Levy v. Equitable Life Assur. Society,* 18 F.R.D. 164 (E.D.Pa.1955).

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 *Moore's Federal Practice* 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.

Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example: Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.

1987 Amendment

The amendments are technical. No substantive change is intended.

2007 Amendment

The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 56(a) and (b) referred to summary-judgment motions on or against a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment. The list was incomplete. Rule 56 applies to third-party claimants, intervenors, claimants in interpleader, and others. Amended Rule 56(a) and (b) carry forward the present meaning by referring to a party claiming relief and a party against whom relief is sought.

Former Rule 56(c), (d), and (e) stated circumstances in which summary judgment "shall be rendered," the court "shall if practicable" ascertain facts existing without substantial controversy, and "if appropriate, shall" enter summary judgment. In each place "shall" is changed to "should." It is established that although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256-257 (1948). Many lower court decisions are gathered in 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d, § 2728. "Should" in amended Rule 56(c) recognizes that courts will seldom exercise the discretion to deny summary judgment when there is no genuine issue as to any material fact. Similarly sparing exercise of this discretion is appropriate under Rule 56(e)(2). Rule 56(d)(1), on the other hand, reflects the more open-ended discretion to decide whether it is practicable to determine what material facts are not genuinely at issue.

Former Rule 56(d) used a variety of different phrases to express the Rule 56(c) standard for summary judgment--that there is no genuine issue as to any material fact. Amended Rule 56(d) adopts terms directly parallel to Rule 56(c).

2009 Amendment

The timing provisions for summary judgment are outmoded. They are consolidated and substantially revised in new subdivision (c)(1). The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action. If the motion seems premature both subdivision (c)(1) and Rule 6(b) allow the court to extend the time to respond. The rule does set a presumptive deadline at 30 days after the close of all discovery.

The presumptive timing rules are default provisions that may be altered by an order in the case or by local rule. Scheduling orders are likely to supersede the rule provisions in most cases, deferring summary-judgment motions until a stated time or establishing different deadlines. Scheduling orders tailored to the needs of the specific case, perhaps adjusted as it progresses,

are likely to work better than default rules. A scheduling order may be adjusted to adopt the parties' agreement on timing, or may require that discovery and motions occur in stages--including separation of expert-witness discovery from other discovery.

Local rules may prove useful when local docket conditions or practices are incompatible with the general Rule 56 timing provisions.

If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due.

**2010 Amendment**

Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

**Subdivision (a).** Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word--genuine "issue" becomes genuine "dispute." "Dispute" better reflects the focus of a summary-judgment determination. As explained below, "shall" also is restored to the place it held from 1938 to 2007.

The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase "partial summary judgment" to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion.

"Shall" is restored to express the direction to grant summary judgment. The word "shall" in Rule 56 acquired significance over many decades of use. Rule 56 was amended in 2007 to replace "shall" with "should" as part of the Style Project, acting under a convention that prohibited any use of "shall." Comments on proposals to amend Rule 56, as published in 2008, have shown that neither of the choices available under the Style Project conventions--"must" or "should"--is suitable in light of the case law on whether a district court has discretion to deny summary judgment when there appears to be no genuine dispute as to any material fact. Compare *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case in which there is reason to believe that the better course would be to be proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 * * * (1948)"), with *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Eliminating "shall" created an unacceptable risk of changing the summary-judgment standard. Restoring "shall" avoids the unintended consequences of any other word.

Subdivision (a) also adds a new direction that the court should state on the record the reasons for granting or denying the motion. Most courts recognize this practice. Among other advantages, a statement of reasons can facilitate an appeal or subsequent trial-court proceedings. It is particularly important to state the reasons for granting summary judgment. The form and detail of the statement of reasons are left to the court's discretion.

The statement on denying summary judgment need not address every available reason. But identification of central issues may help the parties to focus further proceedings.

**Subdivision (b).** The timing provisions in former subdivisions (a) and (c) are superseded. Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case.

**Subdivision (c).** Subdivision (c) is new. It establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules.

Subdivision (c)(1) addresses the ways to support an assertion that a fact can or cannot be genuinely disputed. It does not address the form for providing the required support. Different courts and judges have adopted different forms including, for example, directions that the support be included in the motion, made part of a separate statement of facts, interpolated in the body of a brief or memorandum, or provided in a separate statement of facts included in a brief or memorandum.

Subdivision (c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. Materials that are not yet in the record--including materials referred to in an affidavit or declaration--must be placed in the record. Once materials are in the record, the court may, by order in the case, direct that the materials be gathered in an appendix, a party may voluntarily submit an appendix, or the parties may submit a joint appendix. The appendix procedure also may be established by local rule. Pointing to a specific location in an appendix satisfies the citation requirement. So too it may be convenient to direct that a party assist the court in locating materials buried in a voluminous record.

Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute. And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Subdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record. Nonetheless, the rule also recognizes that a court may consider record materials not called to its attention by the parties.

Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). Other provisions are relocated or omitted. The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.

A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.

**Subdivision (d).** Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).

A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary-judgment motion.

**Subdivision (e).** Subdivision (e) addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c). As explained below, summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.

Subdivision (e)(2) authorizes the court to consider a fact as undisputed for purposes of the motion when response or reply requirements are not satisfied. This approach reflects the "deemed admitted" provisions in many local rules. The fact is considered undisputed only for purposes of the motion; if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply remains free to contest the fact in further proceedings. And the court may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute.

Subdivision (e)(3) recognizes that the court may grant summary judgment only if the motion and supporting materials-- including the facts considered undisputed under subdivision (e)(2)--show that the movant is entitled to it. Considering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed. Once the court has determined the set of facts--both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply--it must determine the legal consequences of these facts and permissible inferences from them.

Subdivision (e)(4) recognizes that still other orders may be appropriate. The choice among possible orders should be designed to encourage proper presentation of the record. Many courts take extra care with pro se litigants, advising them of the need to respond and the risk of losing by summary judgment if an adequate response is not filed. And the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant.

**Subdivision (f).** Subdivision (f) brings into Rule 56 text a number of related procedures that have grown up in practice. After giving notice and a reasonable time to respond the court may grant summary judgment for the nonmoving party; grant a motion on legal or factual grounds not raised by the parties; or consider summary judgment on its own. In many cases it may prove useful first to invite a motion; the invited motion will automatically trigger the regular procedure of subdivision (c).

**Subdivision (g).** Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment. It becomes relevant only after the court has applied the summary-judgment standard carried forward in subdivision (a) to each claim, defense, or part of a claim or defense, identified by the motion. Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute. The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.

If it is readily apparent that the court cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

**Subdivision (h).** Subdivision (h) carries forward former subdivision (g) with three changes. Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions. *See* Cecil & Cort, Federal Judicial Center Memorandum on Federal Rule of Civil Procedure 56(g) Motions for Sanctions (April 2,

2007). In addition, the rule text is expanded to recognize the need to provide notice and a reasonable time to respond. Finally, authority to impose other appropriate sanctions also is recognized.

Notes of Decisions (5239)

Fed. Rules Civ. Proc. Rule 56, 28 U.S.C.A., FRCP Rule 56
Including Amendments Received Through 1-1-22

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.